# No. 26-1121

In THE UNITED STATED COURT OF APPEALS
FOR THE SECOND CIRCUIT

Jane Doe Esq.,
*Plaintiff-Appellant.*
*v.*

The Legal Aid Society
*Defendants-Appellees*,

*ON APPEAL FROM*

THE UNTITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# APPELLANT'S BRIEF

SUBMITTED BY:

ANONYMOUS COUNSEL
*Attorney for* Plaintiff-Appellant Jane Doe Esq.,

# TABLE OF CONTENTS

Table of Contents ………………………………………………………………………2

Jurisdictional Statement…………………………………………………………..….6

Issues Presented…………………………………………………………………..….7

I. Did the District Court abuse its discretion when it changed its prior *ex parte* motion ruling from granting anonymity on finding of "harmful public attention" to denying anonymity because the Plaintiff did not provide evidence of "real harm from the public" in her renewed motion?........................................................ 7

II. Did the District Court abuse its discretion when it primarily based its decision to deny anonymity on erroneous factual findings?..........................................................................7

III. Did the District Court abuse its discretion by failing to properly address and analyze the evidence under the applicable legal standard in *Sealed Plaintiff* factor five failed to consider that "state actor" status can be attributed to LAS as a tax-exempt organization in the context of the Plaintiff's sex based discrimination claim pursuant to the *Jackson v. Statler Foundation,* 496 F.2d 623 (2d Cir. 1973) state actor test? .................7

IV. Did the District Court abuse its discretion by failing to properly address and analyze the evidence under the applicable legal standard in *Sealed Plaintiff* factor six when it failed to consider the undisputed facts in the record that non-disclosure of Plaintiff's identity would not hamper LAS in discovery or cause LAS to suffer any incremental reputational risk?..................................................................................7

V. Did the District Court abuse its discretion by failing to properly address and analyze the evidence under the applicable legal standard in *Sealed Plaintiff* factor seven when it failed to consider the undisputed evidence that the EEOC does not permit non anonymous complaints, and keeps all its filings sealed from third parties and the public? ………………………………..………………..7

VI. Did the District Court abuse its discretion by failing to properly address and analyze the evidence under the applicable legal standard in *Sealed Plaintiff* factor eight when it failed to consider that the Public Interest would be thwarted if the instant case alleging employment discrimination of the basis of sex did not proceed against LAS, a tax exempt, major organization, tasked by the government to provide constitutionally guaranteed legal services for indigent New Yorkers, because the Plaintiff stated numerous times under oath that she would not proceed with the action if she was not granted anonymity?...............................7

VII. Did the District Court abuse its discretion by failing to properly address and analyze the evidence under the applicable legal standard in *Sealed Plaintiff* factor ten when it failed to consider the fact that LAS, a tax exempt, major organization, tasked by the government to provide constitutionally guaranteed legal services for indigent New Yorkers is" something more" when anonymity is the Plaintiff's main concern ?........ 8

Standard of Review........8

Statement of the Case........11

I. Nature of the Action........11

II. Procedural History........13

III. The District Court Ruling........16

Summary of Argument........16

Argument........17

I. The District Court Abused Its Discretion By Changing Its Prior Ruling On Public Harm, Causing the Plaintiff to Suffer Prejudice........17

II The District Court Abused Its Discretion When It Primarily Based Its Decision To Deny Anonymity On Clearly Erroneous Factual Findings........20

III. The District Court Abused Its Discretion When It Determined Factor Five Did Not Weigh In The Plaintiff's Favor Because LAS Was A "Private Organization"........25

IV. The District Court Abused Its Discretion When It Determined Factor Six Did Not Weigh In The Plaintiff's Favor Because Anonymity Would Prejudice LAS By Hampering Their Ability to Conduct Discovery and Cause Them Reputational Damage........28

V. The District Court Abused Its Discretion When It Determined Factor Seven Did Not Weigh In The Plaintiff's Favor Because The Plaintiff Provided Her Real Name and Identifying Information in Her EEOC Complaint........31

VI. The District Court Abused Its Discretion When It Determined Factor Eight Did Not Weigh In The Plaintiff's Favor Because The Public Interest Would Not Be Served By Non-Disclosure........33

VII. The District Court Abused Its Discretion When It Determined Factor Ten Did Not Weigh In The Plaintiff's Favor Because The Court Does Not Have to Consider Alternative Methods When the Parties Are Known to One Another And The Plaintiff Has Not Presented Something More........34

Conclusion ……………………………………………………………………………35

Certificate of Compliance ………………………………………………………….36

# TABLE OF AUTHORITIES

## Cases

*United States v Pilcher* 950 F.3d 39 (2nd Cir. 2020)……………………………………….6

*Jackson v. Statler Foundation,* 496 F.2d 623 (2d Cir. 1973)…………………………..…..7

*Sealed Plaintiff v Sealed Defendant* 537 F.3d 185,190 (2d Cir. 2008)……………………….8

Doe v. Combs WL 742650 (2d Cir 2026)…………………………………………………8

*Anonymous v Medco Health Solutions, Inc.,* 588 Fed. Appx. 34, (2d. Cir.2014)…………….9

*Zervos v Verizon N.Y. Inc.* 252 F.3d 163,269 (2d. Cir. 2001)…………………………………9

*United States v. Vargas*, 961 F.3d 566, 570 (2d Cir. 2020)…………………………………..10

*United States v. Legros*, 529 F.3d 470, 474 (2d Cir. 2008)…………………………………..10

*Theodoridis v. Islamic Republic of Iran* 2026 WL 1098668, 25-2135 (2d Cir. 2026)………10

*Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)……………………………………….10

*Zesty Paws v. Nutramax Laboratories Inc.,* 157 F.4th 194 ( 2d Cir. 2025)……………………10

*City of New York by & through FDNY v. Henriquez,* 98 F.4th 402, 411 (2d Cir. 2024)……….10

*Motown Prods., Inc. v. Cacomm, Inc*., 849 F.2d 781, 787 (2d Cir. 1988)...……………………10

*Wu Lin v. Lynch*, 813 F.3d 122, 127 (2d Cir. 2016)…………………………………………10

*Siemens Energy, Inc V Petróleos De Venezuela, S.A.,* 82 F.4th 144 (2d. Cir. 2022)…………10

*Sheehan v Starbucks Corporation* WL7466725 (2nd Cir. 2026)………………………………10

*Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 119 (2d Cir. 2021)……………………………………10

*United States v. U.S. Gypsum Co.*, 333 U.S. 364, (1948)...……………………..…………10

*Anderson v. City of Bessemer*, 470 U.S. 564, (1985)…………………………………………11

*Colvin v Keen*, 900 F.3d 63 (2d Cir. 2018)……………………………………………………….18

*Doe v Yale*, WL 1064564 25-1564 (2d Cir. 2026)……………………………………………..18

*Does v. Adams* WL 1255967 (2d Cir. 2026)…………………………………………………..18

*Sloley v NYS DCCC* WL 1416658 (2d Cir. 2025), WL 2678876, (2d Cir. 2022)……………..18

*Does 1-10 v Suffolk County*, WL 2678876, (2d Cir. 2022)……………………………………18

*United States v. Pilcher,* 950 F.3d39105 (2dCir.2020)………………………………………..18

*Doe v Delta Airlines,* 672 Fed.Appx. 48 (2d Cir 2016)………………………………………..18

*Anonymous v. Medco Health Solutions, Inc.,* 588 Fed.Appx. 34 (2d Cir. 2014)……………….18

*Doe 1 v Branca USA Inc.,* WL 2713543 (S.D.N.Y. 2022)………………………………………19

*Doe v Del Rio,* 241 F.R.D. 154, 157 (S.D.N.Y.2006)…………………………………………19,33

*Jackson v. Statler Foundation,* 496 F.2d 623 (2d Cir. 1973)………………………………25,26,27

*Colgate Univ.*, No. 15 Civ. 1069, 2016 WL 1448829……………………………………………29

*Doe v. United Services Life Ins. Co.*, 123 F.R.D. 437 (S.D.N.Y. 1988)………………………… 29

*Doe v. DNA Diagnostics Center LLC* Slip Copy 2025 WL 1725449 (S.D.N.Y. 2025)…………29

*Doe v Gong Xi Fa Cai* Inc., 2019 WL3034793 (S.D.N.Y. 2019)…………………………………31

*Corley v. Vance*, 15-cv-1800, 2015 WL 4164377 (S.D.N.Y. June 22, 2015)…………………….32

*Jane Doe v Salina* 2024 WL 1259362 (E.D. New York March 25, 2024)……………………….34

Statues

42 U.S.C. §2000 e-5(f)(3)…………………………………………………………………..6

28 U.S.C. § 1331, §1343……………………………………………..…………………….6

28 U.S.C. § 1391(b)……………………………………………………………………….6

28 U.S.C. 1291……………………………………………………………………………6

Title VII Civil Rights Act of 1964………………………………………………………..11

## JURISDICTIONAL STATEMENT

On March 24, 2025 Plaintiff-Appellant brought her complaint [docket 25-cv-02409] against the Defendant, The Legal Aid Society, in the Southern District of New York under pseudonym with an *ex parte* motion for leave to proceed pseudonymously. The District Court had subject matter jurisdiction over the Plaintiff's claims pursuant to 42 U.S.C. §2000 e-5(f)(3) and 28 U.S.C. § 1331, and §1343. That venue was proper pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims occurred within the Southern District of New York. The Plaintiff-Appellant had satisfied all the procedural prerequisites for the commencement of the action by timely filing a Charge of Discrimination with the Equal Opportunity Commission ("EEOC") on December 22, 2023, receiving a Notice of Right to Sue on December 30, 2024, and commencing this action within 90 days of receipt of the Notice of Right to Sue on March 24,2025.

On June 20, 2025 the Plaintiff-Appellant served the complaint on LAS with a renewed motion for leave to proceed pseudonymously with leave for restricted nonparty access pursuant to FRCP 5.2 (e) (2). On July 7, 2025 the District Court, with LAS consent, granted restricted nonparty access for all filings related to the Plaintiff-Appellant's privacy motion. On August 8, 2025 LAS submitted an Opposition, and on September 8, 2025 the Plaintiff-Appellant submitted a Reply. On March 31, 2026 (Abrams J., SDNY) denied the Plaintiff-Appellant's motion proceed pseudonymously.

On April 23, 2026 Plaintiff-Appellant filed a timely Notice of Appeal with this Court seeking abuse of discretion review of the District Court's order denying Plaintiff-Appellant's renewed privacy motion. This Court has jurisdiction under 28 U.S.C. 1291 for this Appeal because it is an interlocutory appeal as of right pursuant to the Collateral Order Doctrine. *United States v Pilcher* 950 F.3d 39 (2nd Cir. 2020).

## ISSUES PRESENTED

I. Did the District Court abuse its discretion when it changed its prior *ex parte* motion ruling from granting anonymity on finding of "harmful public attention" to denying anonymity because the Plaintiff did not provide evidence of "real harm from the public" in her renewed motion?

II. Did the District Court abuse its discretion when it primarily based its decision to deny anonymity on erroneous factual findings?

III. Did the District Court abuse its discretion by failing to properly address and analyze the evidence under the applicable legal standard in *Sealed Plaintiff* factor five when it failed to consider that "state actor" status can be attributed to LAS as a tax-exempt organization in the context of the Plaintiff's sex based discrimination claim pursuant to the *Jackson v. Statler Foundation,* 496 F.2d 623 (2d Cir. 1973) state actor test?

IV. Did the District Court abuse its discretion by failing to properly address and analyze the evidence under the applicable legal standard in *Sealed Plaintiff* factor six when it failed to consider the undisputed facts in the record that non-disclosure of Plaintiff's identity would not hamper LAS in discovery or cause LAS to suffer any incremental reputational risk?

V. Did the District Court abuse its discretion by failing to properly address and analyze the evidence under the applicable legal standard in *Sealed Plaintiff* factor seven when it failed to consider the undisputed evidence that the EEOC does not permit non anonymous complaints, and keeps all its filings sealed from third parties and the public?

VI. Did the District Court abuse its discretion by failing to properly address and analyze the evidence under the applicable legal standard in *Sealed Plaintiff* factor eight when it failed to consider that the Public Interest would be thwarted if the instant case, alleging employment discrimination of the basis of sex, did not proceed against LAS, a tax exempt, major organization,

tasked by the government to provide constitutionally guaranteed legal services for indigent New Yorkers, because the Plaintiff stated numerous times under oath that she would not proceed with the action if she was not granted anonymity?

VII. Did the District Court abuse its discretion by failing to properly address and analyze the evidence under the applicable legal standard in *Sealed Plaintiff* factor ten when it failed to consider the fact that LAS, a tax exempt, major organization, tasked by the government to provide constitutionally guaranteed legal services for indigent New Yorkers is" something more" when anonymity is the Plaintiff's main concern ?

## STANDARD OF REVIEW

Standard Governing The Use Of Pseudonyms In Civil Litigation In Second Circuit

The Second Circuit review of a District Court's decision to grant or deny an application to litigate under a pseudonym is for abuse of discretion. *Sealed Plaintiff v Sealed Defendant* 537 F.3d 185,190 (2d Cir. 2008). A plaintiff seeking to proceed pseudonymously must rebut the presumption of openness and demonstrate that his "need for anonymity" outweighs the "countervailing interests in full disclosure," including "the public interest in disclosure and any prejudice to the defendant." *Doe v. Combs* WL 742650 (2d Cir 2026) citing *Sealed Plaintiff v Sealed Defendant* 537 F.3d 185,189 (2d Cir. 2008). In balancing those interests, courts in this Circuit consider the ten non-exhaustive factors set out in *Sealed Plaintiff* id. "The judicial recognition of such factors serves as a guide to the proper exercise of discretion." *Sealed Plaintiff v Sealed Defendant* 537 F.3d 185,190 (2d Cir. 2008). "[A] district court is not required to list each of the factors or use any particular formulation as long as it is clear that the court balanced the interests at stake in reaching its conclusion." *Doe v. Combs* WL 742650 (2d Cir 2026) citing *Sealed Plaintiff v Sealed Defendant* 537 F.3d 185,191 (2d Cir. 2008). "We note with approval the following factors, with the caution

that this list is non-exhaustive and district courts should take into account other factors relevant to the particular case under consideration, (1) whether the litigation involves matters that are "highly sensitive and [of a] personal nature," (2) "whether identification poses a risk of retaliatory physical or mental harm to the ... party [seeking to proceed anonymously] or even more critically, to innocent non-parties," (3) whether identification presents other harms and the likely severity of those harms, including whether "the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity," (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age,(5) whether the suit is challenging the actions of the government or that of private parties, (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court, (7) whether the plaintiff's identity has thus far been kept confidential,(8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity, (9) "whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities," and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff." *id.*

A District Court abuses its discretion when "(1) its decision rests on an error of law,…or a clearly erroneous factual finding, or (2) its decision -though not necessarily the product of legal error or a clearly erroneous factual finding –cannot be located within the range of permissible decisions." *Anonymous v Medco Health Solutions, Inc.,* 588 Fed. Appx. 34, No.13-4645, (2d. Cir.2014) *quoting Zervos v Verizon N.Y. Inc.* 252 F.3d 163,269 (2d. Cir. 2001). "The abuse-of-discretion standard incorporates *de novo* review of questions of law … and clear-error review of questions of fact." *United States v. Vargas*, 961 F.3d 566, 570 (2d Cir. 2020) *quoting United States*

*v. Legros*, 529 F.3d 470, 474 (2d Cir. 2008). "We review *de novo* a district court's application of law to undisputed facts." *Theodoridis v. Islamic Republic of Iran* 2026 WL 1098668, 25-2135 (2d Cir. 2026), quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

*Error of Law*

"[A] decision rests on an error of law either because it applies the wrong legal principle, or because it incorrectly applies the right legal principle." *Zesty Paws v. Nutramax Laboratories Inc.,* 157 F.4th 194 ( 2d Cir. 2025), *quoting City of New York by & through FDNY v. Henriquez,* 98 F.4th 402, 411 (2d Cir. 2024) (internal quotation marks and citations omitted). A District Court abuses its discretion when it fails to sufficiently address evidence presented to it and when it fails to properly analyze evidence under the applicable legal standard. *see Zesty Paws v. Nutramax Laboratories Inc.,* 157 F.4th 194 (2d Cir. 2025).

*Clear Error of Fact*

" A factual finding is clearly erroneous either if it "is without support" in the record, *Motown Prods., Inc. v. Cacomm, Inc*., 849 F.2d 781, 787 (2d Cir. 1988). "Clear error might occur, for example, if the district court points to no evidence whatsoever to substantiate a finding of fact or if the finding is contradicted by incontrovertible evidence." *Wu Lin v. Lynch*, 813 F.3d 122, 127 (2d Cir. 2016). The clear error standard requires that we accept a district court's factual findings unless "we are 'left with the definite and firm conviction that a mistake has been committed.'" *Siemens Energy, Inc V Petróleos De Venezuela, S.A.,* 82 F.4th 144 (2d. Cir. 2022), citing, *Sheehan v Starbucks Corporation* WL7466725 (2nd Cir. 2026);*Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 119 (2d Cir. 2021) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). "[I]f the district court's account of the evidence is plausible in

light of the record viewed in its entirety," we "may not reverse it." *Anderson v. City of Bessemer*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

## STATEMENT OF CASE

### Nature Of The Action

Plaintiff-Appellant (*herein after* referred to as Plaintiff) filed the action, 25-cv-2409, in the Southern District of New York on March 24, 2025, **solely under Title VII of the Civil Rights Act of 1964,** against the Defendant-Appellee, The Legal Aid Society of New York [*hereinafter* LAS], for claims of discrimination on the basis of sex [quid pro quo sexual harassment], hostile work environment, and retaliation. There is only ONE defendant in this action, that is, The Legal Aid Society of New York (*herein after* referred to as LAS). Contrary to the District Court's reading of paragraph #1 of the complaint (Apx.Vol. I-9) there are no claims brought by the Plaintiff in her complaint pursuant to New York State Human Rights Law against any anyone. (Apx.Vol.I-48-50)

The Plaintiff filed the action under pseudonym with an *ex parte* motion for leave to file under pseudonym. The District Court granted the *ex parte* motion but directed the Plaintiff to file a renewed motion once the complaint was served. The Plaintiff filed the renewed motion and LAS Opposed it. In its Opposition LAS presented no basis to disturb the District Court's prior ruling. The Plaintiff submitted a Reply. The District Court changed its prior ruling and denied the Plaintiff's motion.

The Plaintiff appeals the denial of her privacy motion on the grounds that the District Court abused its discretion by resting its decision on errors of law [i] when it changed its prior ruling granting anonymity based on a finding of "harmful public attention" to denying anonymity because the Plaintiff did not establish "real harm" thus causing prejudice to the Plaintiff by the unnoticed change, and [iii] when it failed to properly address and analyze evidence in the record under the

applicable legal standard in *Sealed Plaintiff* factors , five, six, seven, eight and ten. The Plaintiff also appeals the denial of her privacy motion on the grounds that District Court's abused its discretion by resting its decision on clear errors of fact.

The Plaintiff's discrimination claims center around violations/breaches of a February 6, 2023 "Agreement" executed between the parties. The violations/breaches are alleged to have been accomplished by the sex based discriminatory acts of [i] a LAS senior management official (quid quo pro sexual harassment, and retaliation) (Apx.Vol. I-48-49), (Apx. Vol.II-30-33)and LAS General Counsel Scott Rosenberg (under cats paw theory of liability) towards the Plaintiff between February 27, 2023 through April 21, 2023, while the Plaintiff was employed at LAS as a senior staff attorney, (Apx.Vol. I-48-49), (Apx. Vol.II-30-33) and [ii] February 2024 post-employment acts of retaliation against the Plaintiff by LAS General Counsel Scott Rosenberg (*herein after Rosenberg*) after her December 31, 2023 resignation from LAS. (Apx.Vol. I-48-49), (Apx. Vol.II-30-33) .

Integral as background and context to Plaintiff's privacy motion and underlying claims is a documented LAS history of timely discrimination complaints she promptly made to Rosenberg and HR about the senior management official, and LAS investigations and related findings/reports of his discrimination against her, ranging from work place violence, retaliation, work place bullying, and sexual harassment between the years 2015-2020. (Apx. Vol.II-30-33) LAS did not deny the existence of the Plaintiff's complaints and the related investigations. (App. Vol. II-86-87, 106-110). Rather LAS argued they were improperly presented by the Plaintiff because they were contractually released and thus barred pursuant to the February 6, 2026 Agreement. (Apx .Vol.II-106-110 )

Also integral as background and context to the Plaintiff's privacy motions and underlying claims is the history of LAS General Counsel Rosenberg's cat's paw theory of discrimination against the Plaintiff by adopting the senior management official's retaliatory discriminatory animus towards her for her rejections over the years of his advances of a sexual and romanticized nature, and imposing habitual retaliatory adverse work actions against her for her complaints about that behavior/discrimination in past and present contexts. (Apx. Vol. II 30-33).

**Procedural History**

On March 24, 2025 the Plaintiff brought the underlying action under pseudonym and simultaneously filed an *ex parte* motion for leave to proceed under pseudonym. In her *ex parte* motion Plaintiff stated that her "need for anonymity", at least in the initial stages of the proceedings, was based on [i] the highly sensitive nature of her claims, (Apx. Vol. II-30-33). [ii] the high likelihood of emotional and psychological harm disclosure would cause her former LAS clients whom she represented on serious felony matters during the events of the background discrimination narrative, (Apx. Vol. II-33-34), and [iii] the high likelihood that she would be exposed to stigmatization and harmful public attention due to LAS being a tax exempt major organization, with state actor status, and with extensive ties to the public by way of providing criminal, family, and civil legal representation and social justice advocacy. (Apx. Vol. II-36-37). The Plaintiff also argued that *Sealed Plaintiff* factors two, three, five, six, seven, eight and ten weighed in her favor. (Apx. Vol. II-34-37).

On March 27, 2025 the District Court granted the Plaintiff's *ex parte* motion and held "The nature of the Plaintiff's sexual harassment allegations is highly personal. Given that the Legal Aid Society is a major organization, revelation of the Plaintiff's identity may also lead to significant

potentially harmful public attention…". The District Court also directed the Plaintiff to file a renewed privacy motion 30 days after service of the complaint. (Apx. Vol. I-22 )

On June 20, 2025 the Plaintiff filed the renewed version of her privacy motion and sought leave of Court to file with restricted non-party access and identifiers for third parties. (App. Vol. II-43)

On July 7, 2025, with LAS consent, the District Court granted nonparty restricted access for all filings related to the Plaintiff's privacy motion. (Apx. Vol. I-25) These filings remain under non-party restricted access. (Apx. Vol. I-28 )

On August 8, 2025 LAS filed its Opposition to the Plaintiff's renewed privacy motion. Therein LAS presented knowingly false narratives to the District Court about [i] "the events leading up to the Plaintiff's departure from LAS," (Apx. Vol. II-84-86),and [ii] the Plaintiff sending unwanted text messages and emails to the senior management official resulting in three LAS reprimands. LAS argued that these combined narratives, in and of themselves, provide the basis for the District Court deny Plaintiff's privacy motion. ," (Apx. Vol. II-84-86),

Despite the plain language of February 6, 2023 Agreement to the contrary, LAS falsely presented to the District Court that the Plaintiff was terminated from her employment on November 7, 2022 because of the truth of the matters asserted in the narratives of the November 7, 2022 Termination Notice, and the March 18, 2021 Final Warning Notice. (Apx. Vol. II-131-133)

LAS argued that none of the Sealed Plaintiff factors weighed in the Plaintiff's favor as follows;

"Factor 1: Plaintiff's allegations are not sensitive in nature."

"Factor 2 and 3: Plaintiff fails to allege that proceeding under her own name would result in any risk of physical or mental harm to her personally or provide non-speculative assertions regarding the risk to third parties."

"Factor 5 and 6: LAS is a mission-driven private non-for-profit organization - not a government entity - which has a strong interest in protecting its reputation from damaging accusations."

"Factor 7: Plaintiff filed an EEOC complaint under her own name."

"Factor 8: The public has a strong interest in the subject matter of this litigation and the Plaintiff's identity as she is a licensed practicing attorney."

"Factor 10: There are less extreme remedies to preserve confidentiality of information than permitting Plaintiff to proceed anonymously."

On September 8, 2025 Plaintiff submitted a Reply therein arguing that L[i]AS presented no basis to disturb the District Court's original decision granting anonymity. (Apx.Vol.II ). [ii] she was NOT terminated from LAS at any time, (Apx.Vol. II-50 ), [iii] the narratives in the March 18, 2021 Final Warning Notice and the November 7, 2022 Termination Notice were never adjudicated as truthful and were withdrawn by LAS pursuant to express terms of the February 6, 2023 Agreement, (App. Vol. II-174-177), and [iv] she never sent "unwanted text messages/emails" to the senior management official, nor was she ever legitimately "reprimanded" for doing so . (App. Vol. II-180).

With regard to the *Sealed Plaintiff* factor five the Plaintiff provided argument and supporting documentation that, in the context of her case alleging discrimination claims based on sex, LAS is subject to state actor status as a tax exempt non for profit, tasked by the government to provide constitutionally required legal services for indigent New Yorkers (Apx. Vol.II-159-162). With regard to the *Sealed Plaintiff* factor six the Plaintiff provided public data from the LAS website Financial Reports that clearly demonstrate LAS will suffer no incremental reputational prejudice by non-disclosure of the Plaintiff's identity. (Apx. Vol.II-163-164). With regard to *Sealed Plaintiff* factor seven the Plaintiff provided documentary proof that the EEOC does not permit complainants to file anonymously and that all EEOC documents are sealed and otherwise unavailable to the public. (Appx. Vol. II-164-165, 169).With regard to *Sealed Plaintiff* factor eight the Plaintiff affirmatively stated under oath she will not peruse the action if anonymity was not granted which would thwart the Public Interest in the litigation against LAS, a tax exempt non for profit, tasked

by the government to provide constitutionally required legal services for indigent New Yorkers (Appx. Vol. II-165-166).

**District Court Ruling**

On March 31, 2026, Judge Ronnie Abrams, [SDNY] denied the Plaintiff-Appellant's renewed motion to proceed pseudonymously with related privacy relief. In its decision the District Court held in several factor analyses that the Plaintiff failed to demonstrate harm by providing "medical evidence" or "evidence of real harm by the public". In arriving at its determination the District Court failed to properly address and analyze the evidence presented by Plaintiff as it related to LAS false narratives about the Plaintiff and *Sealed Plaintiff* factors, five, six, seven, eight and ten.

The District Court ultimately held that only factor one weighs in her favor and that she has not sufficiently demonstrated that her interest in anonymity outweighs the prejudice to Defendant and the customary constitutionally-embedded presumption of openness in judicial proceedings. *Jane Doe Esq v The Legal Aid Society* 2026 WL 880401 (SDNY March 31, 2026) (Apx.Vol.I-16 ).

**SUMMARY OF ARGUMENT**

The District Court abused its discretion in several instances in denying Plaintiff's motion to proceed pseudonymously with related privacy relief. It cannot be said that the record supports that the District Court balanced the interests at stake in reaching its decision.

In the first instance, the District Court abused its discretion by changing its initial ruling [LOTC] that disclosure of identity would subject the Plaintiff to "significant potentially harmful public attention" because "the Legal Aid society is a major organization." LAS did not dispute that it was a "major organization". To compound the lack of notice of this dramatic change, the District Court held that *Sealed Plaintiff* factor seven and eight did not weigh in the Plaintiff's favor because she "failed to present evidence corroborating risk of harm and retaliation from the general public."

This unnoticed dramatic change caused prejudice to the Plaintiff because in her renewed motion, and Reply she relied that the "risk of potential significant harmful public attention" was resolved in her favor because of LAS being a "major organization" – a holding that in and of itself does not require corroborating evidence.

In the second instance, the District Court abused its discretion by primarily basing its decision to deny anonymity on clearly erroneous factual findings and determining those erroneous findings provide "background on the parties involved and context for the events that feature in and ultimately gave rise to the motion." These findings, among other significant erroneous factual findings, were contradicted by the incontrovertible evidence in the record. The District Court's account of the documentary evidence submitted by LAS is not plausible on its face nor is it plausible in light of the record viewed in its entirety.

Finally, the District Court abused its discretion by failing to address and analyze the evidence under the applicable legal standards in *Sealed Plaintiff* factors five,(evidence of LAS "state actor status"), six, (evidence of no prejudice in discovery or reputation), seven,(evidence that EEOC does not permit anonymous filing or third party access to information about complainants), eight,(evidence public interest would be thwarted by disclosure), and ten (evidence that there are not alternative methods to address non-disclosure).

## ARGUMENT I
## The District Court Abused Its Discretion By Changing Its Prior Ruling On Public Harm, Causing the Plaintiff to Suffer Prejudice

On March 27, 2025 the District Court granted the Plaintiff's *ex parte* motion and held "The nature of the Plaintiff's sexual harassment allegations is highly personal. Given that the Legal Aid Society is a major organization, revelation of the Plaintiff's identity may also lead to significant potentially harmful public attention…". In so holding, the District Court considered that *Sealed*

*Plaintiff* factor 3, "other harms", were relevant to the facts of the particular case under consideration and that they existed because of the nature of LAS being a "major organization."

In her renewed motion, the Plaintiff relied that "risk of potential significant harmful public attention" had been established as the LOTC because of the nature of LAS being a "major organization." In their opposition LAS did not dispute that they were a "major organization".

*Standard of Review*

"Given that under LOTC the question whether to change a ruling is addressed to the court's discretion, the trial court's discretion to make the change is reviewed on an abuse of discretion standard. The most common problem that would justify the appellate court in finding that the trial court abused its direction in making a change of ruling would be that doing so caused prejudice to the appellant*." Colvin v Keen*, 900 F.3d 63 (2d Cir. 2018).

*Application*

Since *Sealed Plaintiff* was decided in 2008 the Second Circuit has reviewed the District Courts denial of granting anonymity on approximately eight occasions.[ see *Doe v Yale*, WL 1064564 25-1564 (2d Cir. 2026), *Doe v. Combs* WL 74265025-986(2d Cir.2026), *Does v. Adams* WL 1255967 (2d Cir. 2026), *Sloley v NYS DCCC* WL 1416658 (2d Cir. 2025), WL 2678876, (2d Cir. 2022*), Does 1-10 v Suffolk County*, WL 2678876, (2d Cir. 2022), *United States v. Pilcher*, 950 F.3d39105 (2dCir.2020), *Doe v Delta Airlines,* 672 Fed.Appx. 48 (2d Cir 2016)*, Anonymous v. Medco Health Solutions, Inc.*, 588 Fed.Appx. 34 (2d Cir. 2014).] A central theme addressed in theses appeals is whether the District Court abused its discretion in determining the concept of "harm" to the Plaintiff as a result of disclosure. While *Sealed Plaintiff* addresses harm specifically in two distinct factors; factor two (retaliatory, physical, or mental harm), and factor three (other

harms), the District Courts often lumps factor two and three together in its analysis. The concept of "harm" due to disclosure also presents often in factor seven, eight and ten analyses.

Regardless of which factor the District Courts address the concept of "harm", they systematically require "harm" typically should be demonstrated by "medical evidence" or "something more". "Something more" being defined as "evidence of real (and not conclusory) harm that is substantial and that will flow directly from and is directly linked to disclosure of the of the party's name." *Doe 1 v Branca USA Inc.,* WL 2713543 (S.D.N.Y. 2022).The District Courts systematically deny anonymity because "harm" has not been satisfied by "medical evidence" or "evidence of real harm". As a result Plaintiffs typically withdraw their suits due to denial of anonymity. This is inherently problematic because the public's right to know who is using the Court's is clearly thwarted by litigants not using the Courts because the price of access it too high. *Doe v Del Rio,* 241 F.R.D. 154, 157 (S.D.N.Y.2006).

When the District Court's original decision found "harm" to the Plaintiff existed because LAS is a "major organization" it was clearly following *Sealed Plaintiff* requirement that District Courts "should take into account other factors relevant to the particular case under consideration." Here, the District Court's original analysis of harm was Defendant centered – *LAS being a "major organization."* Under those circumstances the District Court was inherently holding that "medical evidence" or "evidence of real harm" was not a necessary in the determination of harm under the facts unique to this case. In her renewed motion the Plaintiff relied to her detriment on the Court's original determination of harm.

In its opposition LAS did not dispute that it was a "major organization". Rather, LAS presented unresponsive opposition focused the Plaintiff's status as a "licensed attorney" and that "the Public's interest far outweighs professional embarrassment and any concomitant financial harm."

(Appx. Vol. II pg. ) At no time did the Plaintiff alleged that she would suffer reputational or financial harm due to disclosure.

The District Court's decision, in the absence of any new arguments, new evidence, or changed circumstances that "LAS is a major organization" held that factors seven and eight respectively weighed against the Plaintiff because she failed to present "evidence corroborating the alleged risk of harm and retaliation from the general public"[factor seven], and "evidence of real (and not conclusory) harm that is substantial and that will flow directly from and is directly linked to disclosure of the of the party's name"[factor eight]. (Appx. Vol. I-15-16). The District Court offered no explanation as to why it changed its prior ruling and was now requiring the Plaintiff to present "medical evidence of harm" or "real evidence of harm" to establish that which had already been established without the need for such evidence.

In her renewed privacy motion, the Plaintiff relied on the LOTC to her detriment that harm was established by the very nature of LAS being a "major organization". The District Court abused its discretion in changing this prior ruling without any sufficient notice to the Plaintiff, and in the absence of any new arguments, new evidence, or changed circumstances that "LAS is a major organization". This Court must reverse the District Court decision, and grant anonymity to the Plaintiff.

## ARGUMENT II
## The District Court Abused Its Discretion When It Primarily Based Its Decision To Deny Anonymity On Clearly Erroneous Factual Findings.

The District Court abused its discretion when it primarily based its Decision to deny anonymity on clearly erroneous factual findings, all of which were uncontrovertibly contradicted by the extrinsic evidence in the record. Specifically, the District Court erroneously held the following in regard to the documentary evidence;

> "The challenged material in LAS's opposition details the events leading up to the Plaintiff's eventual departure from LAS, including a final warning sent to her, which documented several incidents of alleged "insubordination inappropriate bullying engaged by the Plaintiff,' including [the senior management official]. The brief goes on to discuss Plaintiff's termination on November 7, 2022 for insubordination, and the Separation Agreement that followed. **The challenged paragraphs in Rosenberg Declaration support those assertions."** (pg. 2 Memorandum and Opinion, Abrams, J.)

> "By contrast, **each challenged passage or document at issue here is relevant to Plaintiff's Privacy Motion and the disposition of the matter as a whole**. **They provide background on the parties involved and context for the events that feature in and ultimately gave rise to the motion, and the matter itself."**(pg. 12 Memorandum and Opinion, Abrams, J.)

*Application*

*a. Events Leading Up to the Plaintiff's Eventual Departure from LAS*

Contrary to the District Court's holding, the plain language of the "WHEREAS" clauses in the February 6, 2023 "Agreement" between LAS and the Plaintiff described the actual events leading up to the Plaintiff's departure from LAS. (Apx. Vol. II-130-133). The March 12, 2024 "Letter of Reference" signed by LAS CEO Twyla Carter confirmed the dates of the Plaintiff's employment at LAS were **November 17, 2014 to December 31, 2023**. (Apx.Vol. II-192).

The "WHEREAS" events were uncontrovertibly contrary to the knowingly false narratives LAS presented, and the District Court adopted in the determination of the Plaintiff's privacy motion. Those events are as follows; [i] the Plaintiff was never terminated from her employment at LAS, [ii] the Plaintiff made claims against LAS that the Final Warning Notice and Termination Notice were pre-textual and retaliatory for her engagement in protected activity of making [ethics] complaints against LAS for her excessive case load one week before the Final Warning Notice was served on her, and two and a half months before the Termination Notice was served on her, [iii] LAS withdrew the Termination Notice and Abandoned the Final Warning Notice in exchange for the Plaintiff's release of liability against LAS for Retaliation in the February 6, 2023 contract

agreement between the parties, [iv] the Plaintiff continued her employment with all her benefits of employment after signing the February 6, 2023 contract, [v] LAS provided letters of reference from CEO Twyla Carter, [vi] LAS promised not to disparage or malign her to third parties, and [vii] LAS promised not to interfere with her efforts to obtain new employment.

The terms of the February 6, 2023 "Agreement" between the Plaintiff and LAS did not operate as a "Separation Agreement". There was no resignation tendered at the time of signing, the Plaintiff continued performing legal duties on her cases, the Plaintiff continued receiving full benefits of her employment, and resignation was totally in control of the Plaintiff. It is undisputed that the Plaintiff separated from her employment at LAS when she tendered her resignation on December 23, 2023 effective December 31, 2023. (Apx. Vol. II-188).

Those pertinent terms of the withdrawn Termination Notice and the February 6, 2023 "Agreement" that directly uncontrovertibly contradict the District Court's factual findings that the Plaintiff was terminated from her employment at LAS are as follows;

Notice of Termination: states in pertinent part; (Appx. Vol. II pg. ).

> "Effective Immediately, **you are placed on paid suspension** (administrative leave) until the completion of the Third Step grievance process, or until you have given written notice that you do not intend to file a grievance with respect to this **proposed termination**…While on paid administrative leave you will **continue to collect your full LAS salary** , **you will remain on LAS health insurance** , and **your e-mail will remain active. You must be available by e-mail and cellphone at reasonable times** to answer any questions LAS may have as your work is transitioned to others."

February 6, 2023 Contract states in pertinent part; (Appx. Vol. II pg. ).

> " WHEREAS, by memo dated March 18, 2021, LAS issued [Plaintiff] a Final Warning Notice;" (pg. 1 of 10)

> "WHEREAS, on April 1, 2021, the ALAA grieved the Final Warning Notice and the parties agreed to waive the requirement that the hearing must be conducted in ten calendar days;" (pg. 1 of 10)

> "WHEREAS, the parties adjourned the hearing of the Final Warning Notice

to a future unspecified date and such hearing was never held;" (pg. 1 of 10)

"WHEREAS, on November 7, 2022 **LAS served [Plaintiff] a Notice of Termination, and placed her on paid suspension (Paid Administrative Leave") effective immediately** until the completion of the Third Step grievance process." (pg. 1 of 10)

"WHEREAS, on November 16, 2022 the Association of Legal Aid Attorneys (ALAA) grieved the Notice of Termination and requested a hearing to adjudicate the Final Warning Notice issued to [Plaintiff] dated March 18, 2021;" (pg. 1 of 10)

'WHEREAS, a grievance hearing on both the Final Warning NOTICE and the Notice of Termination was scheduled for December 16, 2022, adjourned to January 6, 2023, and then adjourned to February 3, 2023;"

"WHEREAS in addition to ALAA's grievances regarding the Final Warning Notice and the Notice of Termination, **[Plaintiff] has asserted claims of retaliation for her engagement in protected activity related to her claims of an excessive case load."** (pg. 1 of 10)

"WHEREAS the **Parties reached an agreement to resolve all matters in controversy, disputes, causes of action, claims, contentions, and differences between and among them in accordance with the terms and conditions of this Agreement."** (pg. 1 of 10)

"**LAS will withdraw [Plaintiff's] Termination Notice**. (pg. 3 of 10)

"**Plaintiff is knowingly and voluntarily waiving and releasing forever whatever claims [plaintiff] has against LAS,** and their subsidiaries and affiliates, together with its officers, members, directors, executives, consultants and employees and its agents and any successors and assigns ( collectively referred to as "Releasees"), based on [Plaintiff's] employment with LAS and the cessation of her employment at LAS. (pg 3 of 10)

"Nothing herein shall be deemed to constitute and an admission of wrongdoing by [Plaintiff], LAS or ALAA or any of the other Releasees. **Neither this Agreement or any of its terms may be used as an admission be "introduced as evidence as to any issue of law or fact in any proceeding, suit, action, or hearing other than an action to enforce the rights and obligations set forth in this Agreement."** (pg 8 of 10).

"[Plaintiff] will remain on Paid Administrative Leave through April 30, 2023" (pg. 2 of 10) " [Plaintiff] will be eligible for [FY23] increase or payment that is effective for a period up to and including April 30, 2023." (pg. 2 of 10) " [Plaintiff will continue to accrue vacation hours while she is on Paid Administrative Leave." (pg. 2 of 10)

" LAS shall pay [Plaintiff], in her final paycheck, for all accrued but unused vacation hours.. The parties agree that (a) as of January 31, 2023, [Plaintiff] had accrued 173.03 vacation hours and (b) if [Plaintiff] remains on payroll until April 30, 2023, she will have accrued a total of 220.33 vacation hours (i.e., 6.3 weeks of vacation pay). (pg. 2 of 10).

> " LAS health insurance, dental and vision coverage for [Plaintiff] will remain active at its current level (family coverage under the current Oxford High Plan) through the earlier of December 31, 2023 , or the end of the month in which she has obtained health, dental, and vision insurance coverage through another employer or otherwise." (pg. 2 of 10).
>
> "At such time as [Plaintiff] becomes employed at least three-fifths time elsewhere, or December 31, 2023, which ever is earlier, [Plaintiff] shall submit, and LAS shall accept a Letter of Resignation. [Plaintiff] shall deliver the such Letter of Resignation to Scott Rosenberg, General Counsel, via-email and Mr. Rosenberg shall acknowledge receipt via email." (pg. 2 of 10).

*b. The Plaintiff Was Not Reprimanded for Sending Unwanted Communications to the Senior Management Official.*

Also contrary to the District Court's holding, the September 20, 2018 email from then LAS Board of Directors, Richard Davis, to Rosenberg and the Plaintiff clarified that LAS requested the Plaintiff avoid direct communication with the senior management official, and he with her, based on the findings of her prior discrimination complaint against him and not because of any finding that would subject her to discipline. (Apx. Vol.II-50) That evidence was uncontrovertibly contrary to the knowingly false narratives LAS presented and the District Court adopted in the determination of the Plaintiff's privacy motion.

*c. The Plaintiff was NOT placed on an unpaid administrative leave from February 6, 2023 to December 31, 2023*

Also contrary to the District Court's holding that the Plaintiff was placed on an unpaid administrative leave from February 6, 2023 to December 31, 2023, the plain language in the Rosenberg Declaration and the plain language of February 6, 2023 "Agreement" between LAS and the Plaintiff clearly state that the Plaintiff was on consistent paid administrative leave from November 7, 2022 to April 30, 2022 , received vacation accrual from November 7, 2022 to April 30, 2022, received a (3k) Y23 retro check in March, 2023, received full family medical, dental, and vision coverage ($5400 monthly premium paid by LAS) until December 31, 2023. (Appx. Vol. II-130-142)

*d. <u>The prospective employer did not require the Plaintiff to a provide a professional reference from the senior management official</u>.*

Also contrary to the District Court's holding that the prospective employer "required her to provide professional references from her supervisors at LAS, including the [senior management official]" the plain language of the plaintiff's emails in Plaintiff's exhibit N, (Apx. Vol.II-53-76) and the plain language of the affidavit of the prospective employer (Apx. Vol. II-142) clearly state that plaintiff was not required to give a reference from the senior management official, and that she notified him several times in writing that he was not authorized by her to be personal capacity reference, as was her right to do pursuant to the February 6, 2022 LAS-Plaintiff "Agreement".

Many of the factual findings the District Court based its decision on are uncontrovertibly contradicted by the extrinsic evidence in the record. It cannot be said that the District Court's account of the evidence is plausible in light of the record viewed in its entirety. The District Court abused its discretion in arriving at its determination of the Plaintiff's privacy motion by making clearly erroneous factual findings. This Court must reverse the District Court's decision and grant the Plaintiff anonymity.

## ARGUMENT III
## <u>The District Court Abused Its Discretion When It Determined Factor Five Did Not Weigh In The Plaintiff's Favor Because LAS Was A "Private Organization</u>".

The District Court abused its discretion by failing to properly analyze the evidence under the applicable legal standard in *Sealed Plaintiff* <u>factor five</u> when it concluded "the Legal Aid Society remains a private organization", and disregarded that "state actor" status can be attributed to LAS, a tax exempt organization under <u>factor five</u> in the context of the Plaintiff's sex based discrimination claim, pursuant to the *Jackson v. Statler Foundation,* 496 F.2d 623 (2d Cir. 1973) test?

*Standard of Review*

"[W]hen a lawsuit challenges governmental actions, actors, or policies, the plaintiff has a strong interest in proceeding anonymously." *Doe v Alexander* Slip Copy WL 1637941 (S.D.N.Y. June 9, 2025). "It is noteworthy that several courts have considered claims that the activities of tax-exempt organizations constitute 'state action.' Significantly, these cases divide into two groups: Where racial discrimination is involved, the courts have found 'state action' to exist; where other constitutional claims are at issue (due process, freedom of speech), the courts have generally concluded that no 'state action' has occurred." *Jackson v. Statler Foundation,* 496 F.2d 623 (2d Cir. 1973). [T]ax-exempt philanthropy which constitutes 'state action' is limited thereby only to the extent of ensuring an absence of discrimination. *see id.*, It is well settled that one cannot operate its tax-exempt organization in a discriminatory manner and entangle the State in the process. *see Jackson v. Statler Foundation,* 496 F.2d 623 (2d Cir. 1973).

In *Jackson v Statler Foundation* this Court laid out a test of five factors "which are particularly important to a determination of 'state action" in the context of discrimination claims against tax-exempt organizations. They are, "(1) the degree to which the 'private' organization is dependent on governmental aid; (2) the extent and intrusiveness of the governmental regulatory scheme; (3) whether that scheme connotes government approval of the activity or whether the assistance is merely provided to all without such connotation; (4) the extent to which the organization serves a public function or acts as a surrogate for the State; (5) whether the organization has legitimate claims to recognition as a 'private' organization in associational or other constitutional terms." *id.,*

The *Jackson v Statler Foundation* Court held, " In sum, we believe that if on remand the district court finds that the defendant foundations are substantially dependent upon their exempt status, that the regulatory scheme is both detailed and intrusive, that that scheme carries connotations of government approval, that the foundations do not have a substantial claim of constitutional

protection, and that they serve some public function, then a finding of 'state action' would be appropriate. Moreover, even if one of these factors is absent, a finding of 'state action' may still be appropriate." *id*.,

*Application*

District Court failed to properly analyze the evidence and argument presented by the Plaintiff that state actor status should be imputed to the Legal Aid Society for Sealed Plaintiff factor five in the context of the Plaintiff's sex based discrimination claims. Specifically the District Court ignored that the LAS Financial Report June 30, 2024", ["LAS FR24"], publicly filed on their website, provides the Court with ample basis to find they meet the *Jackson* five step analysis to be considered a "state actor" in relation to factor #5. (Apx. Vol.II-159-162)

> Page 9 of "LAS FR24" states;
> "Tax-exempt status: The Society is qualified as a Section 501(c)(3) tax-exempt organization under Section 501(a) of the Internal Revenue Code (the IRC) and, accordingly, is not subject to federal income taxes. As a not-for-profit organization, the Society is also exempt from New York State and New York City sales and income taxes. The Society has been classified as a publicly supported charitable organization under Section 509(a)(1) of the IRC and qualifies for the maximum charitable contribution deduction for donors."

> page 7 of "LAS FR24" states;
> "Note 1. Organization The Legal Aid Society (the Society) is a not-for-profit corporation founded in 1876, that provides legal services to the indigent of New York City through a number of operating practices. The criminal defense practice, which provides the majority of trial level public defender services in New York City, as well as the criminal appeals and parole revocation defense programs, are financed principally through contracts with the city and the state of New York as well as private financial support. The juvenile rights practice is financed principally through a contract with the Office of Court Administration of the state of New York. The civil practice relies on contracts with agencies of the city and the state of New York and the federal government, as well as on financial support from the public, including foundations, law firms, corporations and individuals. **Although the Society is not a governmental institution, it receives significant program revenue and other support through government contracts that are entered into on a periodic basis and are cancelable at any time. As a general rule, those contracts provide revenue to cover cash expenses of funded programs."**

The District Court abused its discretion in determining factor five because it failed to address and analyze the evidence presented under the applicable legal standard. This Court must reverse the District Court's decision and grant the Plaintiff anonymity

## ARGUMENT IV

**The District Court Abused Its Discretion When It Determined Factor Six Did Not Weigh In The Plaintiff's Favor Because Anonymity Would Prejudice LAS By Hampering Their Ability to Conduct Discovery and Cause Them Reputational Damage.**

The District Court abused its discretion by failing to properly address and analyze the evidence under the applicable legal standard in *Sealed Plaintiff* factor six when it concluded that "concealment of the Plaintiff's identity from the public can still hamper a defendant's ability to conduct discovery" and when it concluded that reputational damage risk to a Defendant is high in claims that involve sexual harassment "and fairness requires the Plaintiff to be prepared to stand behind her charges publicly", without regard to the undisputed facts in the record that non-disclosure of Plaintiff's identity would not hamper LAS in discovery or cause LAS to suffer any incremental reputational risk

*Standard of Review*

*Discovery*

"Where, as here, 'Defendants are aware of Plaintiff's true identity and will have an uninhibited opportunity to litigate this matter regardless of whether Plaintiff's identity is disclosed publicly,' there is little risk of prejudice." *Colgate Univ.*, No. 15 Civ. 1069, 2016 WL 1448829, at *3. "Other than the need to make redactions and take measures not to disclose plaintiff's identity, defendants will not be hampered or inconvenienced merely by plaintiff's anonymity in court papers."; *see also* *Doe v. United Services Life Ins. Co.*, 123 F.R.D. 437 (S.D.N.Y. 1988).

*Risk of Reputational Damage*

"The *Sealed Plaintiff* test regards only incremental prejudice from the plaintiff's allegations as opposed to the plaintiffs suing in their own name. *Doe v. DNA Diagnostics Center LLC* Slip Copy 2025 WL 1725449 (S.D.N.Y. June 18, 2025). The sixth *Sealed Plaintiff* factor ultimately comes out in favor of Plaintiff where the Plaintiff has established a need for anonymity and the prejudice to the defendants' reputation or ability to operate merely by a Plaintiff's pursuit of the action under a pseudonym appears minimal. id."

*Application*

*LAS ability to conduct discovery if the Plaintiff's identity was not disclosed.*

Contrary to the District Court's holding there is no basis in the record to state that the Plaintiff "acknowledges" that making redactions and taking measures to not disclose the Plaintiff's identity would "create challenges for LAS during discovery." Indeed, the Plaintiff argued precisely the opposite. (Apx. Vol. II-18-19). Moreover, also contrary to the District Court's holding there is no basis in the record to state that "concealment of the Plaintiff' s identity from the public can still hamper a defendant's ability to conduct discovery." (Apx. Vol. II-35-36)

Under the facts of this particular case there is no person from the public that could provide any discovery to LAS about the Plaintiff's claims. The narrative in the Plaintiff's complaint limits actions to those occurring in LAS offices, phone lines, and email. There is no dispute that historical and current discrimination complaints were made promptly by the Plaintiff, and often to Scott Rosenberg. All past background discrimination events were promptly investigated by LAS. LAS provides no specific factual allegations as to why it would be hampered in discovery by the Plaintiff appearing anonymously under the scenario of the Plaintiff's complaint. LAS does not dispute the limits of the Plaintiff's current discrimination complaints and past historical background discrimination complaints were limited to the settings and players that LAS has real

time records on and is otherwise in total control of the records that would constitute discovery in this matter.

*Incremental prejudice by non-disclosure of the Plaintiff's name.*

Contrary to the District Court holding there is no basis in the record that LAS would suffer incremental reputational damage by revelation of the Plaintiff's name. Here the District Court applies the wrong legal principle. In determining if reputational damage will occur by non-disclosure of the Plaintiff's name, the District Court is to consider incremental damage ie., how much worse is the reputational damage made by non-disclosure of the Plaintiff's name? It goes with out saying that if an employer is sued for sexual harassment by a senior management official, compounded under a cat's paw theory of retaliatory harassment by general counsel, there is going to be some degree of reputational damage. LAS has put forth no evidence or opposition as to why it would suffer incremental prejudice [reputational damage] if the Plaintiff's identity was not disclosed.

The Plaintiff argued, LAS did not dispute, and the District Court failed to consider that according to the "LAS FR24", LAS received **$416,459,771** in support and revenue in 2024. Of that amount **$389,237,175** was from government contracts and **$ 25,224,403** was from donor contributions, leaving approx. 94% of its operating revenue based on government contracts and approx. 6% on donor contributions. (Apx.Vol. II-161).

The evidence presented by the Plaintiff, which LAS did not dispute and the District Court failed to consider, as a matter of law uncontrovertibly contradicted LAS' various statements that permitting the Plaintiff to proceed anonymously would jeopardize their reputation and have an impact on private individual donations, thus its ability to operate.

The District Court abused its discretion in determining factor six because it failed to address and analyze the evidence presented under the applicable legal standard. This Court must reverse the District Court's decision and grant the Plaintiff anonymity.

**ARGUMENT V**

**The District Court Abused Its Discretion When It Determined Factor Seven Did Not Weigh In The Plaintiff's Favor Because The Plaintiff Provided Her Real Name and Identify Information in Her EEOC Complaint.**

The District Court abused its discretion by failing to properly address and analyze the evidence under the applicable legal standard in *Sealed Plaintiff* factor seven when it determined that because "Plaintiff's EEOC complaint contained her name and contact information… factor seven weighs against the Plaintiff proceeding anonymously", without regard for undisputed facts in the record that the EEOC does not permit non anonymous complaints and the EEOC keeps all its filings sealed from third parties and the public.

*Standard of Review*

Factor #7 weighs in a Plaintiff's favor where EEOC documents are not public and the Plaintiff's identity is not otherwise publicly known. *see Doe v Gong Xi Fa Cai* Inc., 2019 WL3034793 (S.D.N.Y. 2019). Where the Plaintiff has taken adequate steps to preserve her confidentiality, the seventh *Sealed Plaintiff* factor leans in favor of allowing her to proceed under a pseudonym. *Corley v. Vance*, 15-cv-1800, 2015 WL 4164377 (S.D.N.Y. June 22, 2015).

*Application*

Under circumstances where the Plaintiff presented documentary evidence that her identity is otherwise unknown publicly and that the documents in the EEOC proceeding are not known or available to the public, (Apx. Vol.II-169-172) the District Court made an error of law in determining factor seven did not weigh in the Plaintiff's favor because the "Plaintif's inclusion of her real name and contact information in the EEOC complaint. (Apx. Vol. I-17 )

The District Court abused its discretion in determining factor seven because it failed to analyze the evidence presented under the applicable legal standard. This Court must reverse the District Court's decision and grant the Plaintiff anonymity.

**ARGUMENT VI**

**<u>The District Court Abused Its Discretion When It Determined Factor Eight Did Not Weigh In The Plaintiff's Favor Because The Public Interest Would Not Be Served By NonDisclosure.</u>**

The District Court abuse its discretion by failing to properly address and analyze the evidence under the applicable legal standard in *Sealed Plaintiff* <u>factor eight</u> when it determined the Public does not always have" an interest in maintain the anonymity of *every* person who alleges…misconduct of a highly personal nature", without any regard that the Public Interest would be thwarted if the case did not proceed against LAS, a tax exempt and tax funded major organization tasked by the government to provide constitutionally guaranteed legal services for indigent New Yorkers, because the Plaintiff, a high volume performing senior staff attorney for LAS, stated numerous times under oath that she would not proceed with the action if she was not granted anonymity.

*Standard of Review*

"It is in the public interest that the price of access to the courts not be too high. Where litigants risk public scorn or even retaliation if their identities are made public, unpopular but valid complaints may not be pursued. The value of open proceedings disappears when there are no proceedings to be had." *Doe v Del Rio,* 241 F.R.D. 154, 157 (S.D.N.Y.2006). Courts have held that, "Although, 'the public has a right to know who is using the courts' especially when issues of significant public concern are raised, Comcast, 2021 WL 694556, at *2, this public interest is thwarted if disclosure would cause the plaintiffs not to pursue the action." see *Doe v. Del Rio* 241 F.R.D. 154, 158 (S.D.N.Y. 2006)

*Application*

The Plaintiff made numerous sworn statements throughout the entire privacy motion practice that she would not proceed with the action if she was not granted anonymity. (Apx. Vol. I-39), (Apx. Vol. II 37, 174).That cannot be called conclusory as a matter of law. Clearly the public interest in open proceedings would by thwarted if the Plaintiff withdraws her complaint because the price of access to the court is too high. Given that LAS is a "major organization" funded by tax payer dollars, the public has great interest that the Plaintiff's sex-based discrimination claims proceed in the Court. Especially under circumstances where LAS has not disputed that the Plaintiff maintained a very high felony case load and conducted many hearings and trials on behalf of the many indigent New Yorkers that LAS is tasked by the Government to provide constitutional 6th amendment guarantees. The public has a high interest in knowing if LAS is treating their staff attorneys in discriminatory ways while those staff attorneys are tasked with providing such valuable constitutionally mandated legal services to indigent New Yorkers on the tax payer's dime.

The District Court abused its discretion in determining factor eight because it failed to analyze the evidence presented under the applicable legal standard. This Court must reverse the District Court's decision and grant the Plaintiff anonymity.

## ARGUMENT VII

**The District Court Abused Its Discretion When It Determined Factor Ten Did Not Weigh In The Plaintiff's Favor Because The Court Does Not Have to Consider Alternative Methods When the Parties Are Known to One Another**

The District Court abused its discretion by failing to properly analyze the evidence under the applicable legal standard in *Sealed Plaintiff* factor ten when it determined that because the Plaintiff's identity was known to the "parties", "without something more" the court does not have

to consider the lack of alternative methods to protect the Plaintiff's identity when Plaintiff's identity is her main concern.

*Standard of Review*

Courts have held when the identity of the party seeking confidentiality is the main concern, rather than certain specific information that could be redacted or sealed, this factor favors anonymity. see, *Jane Doe v Salina* 2024 WL 1259362 (E.D. New York March 25, 2024).

*Application*

The Plaintiff has consistently stated throughout the entire privacy motion practice that non-disclosure of her identity to the public is her concern and that there is no alternative privacy method that will address that concern (Apx. Vol.I-39), (Apx.Vol.II 37, 174). The Court's determination that since the "parties are known to one another" and "without more" then there is no need to determine if alternate methods can address the Plaintiff's concern does not demonstrate that the Court took into account the particular facts and circumstances of the instant case. It is undisputed fact in the record that LAS is a tax exempt and tax funded, major organization tasked by the government to provide constitutionally guaranteed legal services for indigent New Yorkers. This is something more. It is undisputed that the Plaintiff was a senior staff attorney for LAS, with a high felony volume caseload, who conducted many hearings and trials,( Apx. Vol I-64), many of which during the time period alleged in the background discrimination narrative. This is something more.

The District Court abused its discretion in determining factor ten because it failed to analyze the evidence presented under the applicable legal standard. This Court must reverse the District Court's decision and grant the Plaintiff anonymity.

# CONCLUSION

The record before this Court overwhelmingly establishes that the District Court failed to properly address and analyze the evidence regarding the *Sealed Plaintiff* factors, and "the events leading up to the Plaintiff's departure from LAS." The District Court originally granted anonymity by recognizing the undeniable factor of this case – disclosure of the Plaintiff's name presented a risk of significant harmful public attention because LAS is a "major organization". There was no argument or evidence presented to the District Court in the renewed motion practice that superseded this critical factor central to a determination of anonymity in this particular case.

This is an important case for the Plaintiff and for the Public because LAS is a tax exempt major organization tasked by the government to provide constitutionally guaranteed legal representation to indigent New Yorkers, and because the Plaintiff was a senior staff attorney providing high volume legal representation on serious felony cases during the extensive background discrimination narrative. The District Court's dramatic change of course in its determination of the Plaintiff's renewed privacy motion set too high of a price of access to the Court house doors for the Plaintiff and relatedly the tax paying Public.

It can not be said that the District Court balanced the interests at stake in reaching its conclusion in the Plaintiff's renewed privacy motion. The District Court abused its discretion as set forth herein. This Court must reverse the decision and order of the District Court and grant the Plaintiff anonymity.

Respectfully submitted,

PLAINITFF-APPELLANT,

Jane Doe Esq., By: Anonymous Counsel

CERTIFICATION REQUIREMENT

I hereby certify that this brief complies with the type-volume limitations of Rule 32(a) (7) (B) of the Federal Rules of Appellate Procedure as modified by the Second Circuit Local Rule 32.1 (a) (4), in that this brief contains 9774 words, excluding the parts of the brief exempted by Fed.R App.P. 32 (f).

I further certify that this brief complies with the typeface requirements of Fed.R App.P. 32 (a) (5) and the type style requirements of Fed.R App.P. 32 (a) (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 12 point Times New Roman font.

Dated: September 29, 2026

**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

CAPTION:

Jane Doe Esq.,

v.

The Legal Aid Society

**CERTIFICATE OF SERVICE***

Docket Number: 26-1121

I, Anonymous Counsel, hereby certify under penalty of perjury that
(print name)

on September 30, 2026, I served a copy of Plaintiff-Appellant's BRIEF
(date)

Plaintiff-Appellant's Appendix VOl. I[non restricted record] Appendix Vol.II [restricted non party access FRAP 25]
(list all documents)

by (select all applicable)**

___ Personal Delivery ___ United States Mail ___ Federal Express or other Overnight Courier

___ Commercial Carrier X E-Mail (on consent)

on the following parties:

| Name | Address | City | State | Zip Code |
|---|---|---|---|---|
| Joan Gilbride Esq., jgilbride@ kbrlaw.com | 875 Third Avenue 5th Fl | N.Y. | N.Y. | 10022 |
| Name | Address | City | State | Zip Code |
| Name | Address | City | State | Zip Code |
| Name | Address | City | State | Zip Code |

*A party must serve a copy of each paper on the other parties, or their counsel, to the appeal or proceeding. The Court will reject papers for filing if a certificate of service is not simultaneously filed.

**If different methods of service have been used on different parties, please complete a separate certificate of service for each party.

September 30, 2026
Today's Date

/s/ Anonymous Counsel
Signature